# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# NORTHERN DIVISION

**CANDY DAVIS**                                                                                                                **PLAINTIFF**

**V.**                                  **NO. 3:24-CV-00038-JTK**

**MARTIN J. O'MALLEY, Commissioner,**
**SOCIAL SECURITY ADMINISTRATION**                                  **DEFENDANT**

## **ORDER**

### I. **Introduction:**

On August 13, 2021, Plaintiff Candy Davis filed an application for Title II and Title XVI benefits, alleging disability beginning September 15, 2019. (Tr. at 12). Her claim was denied initially and upon reconsideration. *Id.* After a hearing, the Administrative Law Judge ("ALJ") found that Davis was not disabled. (Tr. at 26). The Appeals Council denied her request for review, and the ALJ's decision now stands as the final decision of the Commissioner. This Court[1] affirms that decision.

### II. **The Commissioner's Decision:**

Following the five-step sequential process,[2] the ALJ first found that Davis had not engaged in substantial gainful activity since September 15, 2019. (Tr. at 15). The ALJ

---

[1] The parties have consented in writing to the jurisdiction of a United States Magistrate Judge. (*Doc. 5*).

[2] The ALJ determines: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)–(g), 416.920(a)(4).

found that Davis had the following severe impairments: lumbar degenerative disease, obesity, depression, anxiety, posttraumatic stress disorder, and attention deficit/hyperactivity disorder. *Id.* After finding that none of Davis's impairments met or equaled a listed impairment, the ALJ determined that Davis had the residual functional capacity ("RFC") to perform work at the light exertional level with the following exceptions: she was limited to simple, repetitive work; she could make simple work-related decisions; she could deal with changes in a routine work setting but not a production-rate pace (such as assembly-line work); and she could occasionally interact with coworkers, supervisors, and the general public. (Tr. at 17).

The ALJ determined that Davis was unable to perform her past relevant work. (Tr. at 24). Relying upon testimony from a vocational expert ("VE"), the ALJ found—based on Davis's age, education, work experience, and RFC—that she could perform jobs existing in significant numbers in the national economy, including routine clerk, housekeeping cleaner, and collator operator. (Tr. at 25). Consequently, the ALJ concluded that Davis was not disabled. (Tr. at 26).

### III. Discussion:

#### A. Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as

adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision."

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

In clarifying the "substantial evidence" standard applicable to review of administrative decisions, the Supreme Court has explained that "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . is 'more than a mere scintilla.'" *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.*

### B. Arguments on Appeal

Davis identifies two points on appeal: (1) that the ALJ's RFC determination is not supported by substantial evidence and (2) that the ALJ erred at step five by not resolving potential conflicts between the VE testimony and the *Dictionary of Occupational Titles* ("DOT"). Neither argument has merit.

#### 1. RFC

Davis first asserts that the ALJ should have included additional limitations in the RFC to accommodate Davis's physical and mental impairments. Regarding her physical impairments, Davis contends that she cannot meet the standing or walking demands of light

work, which requires standing or walking for up to six hours in an eight-hour workday. As for her mental impairments, she maintains that the RFC does not adequately account for the severity of her condition, especially as to her ability to attend work regularly and to perform on a consistent basis.

A claimant bears the burden of establishing her RFC, which is the most she can do despite her limitations. *Despain v. Berryhill*, 926 F.3d 1024, 1027 (8th Cir. 2019); *see also* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). In determining the claimant's RFC, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, considering all impairments. *Ostronski v. Chater*, 94 F.3d 413, 418 (8th Cir. 1996). An ALJ must review all the relevant medical and other evidence in the record when determining a claimant's RFC but is not required to include limitations that are not supported by the evidence. *See McGeorge v. Barnhart*, 321 F.3d 766, 769 (8th Cir. 2003); *see also* 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).

Turning first to Davis's physical impairments, she testified that she had a bulging disc between L4-L5, a cyst on her spine, carpal tunnel, degenerative disc disease, and fibromyalgia. (Tr. at 46). She acknowledged that she had not received treatment for these conditions, and the record is devoid of any imaging, diagnostic testing, or examinations related to her physical impairments. (Tr. at 46, 51). At the time of the hearing, Davis stated that she was 5'7" and weighed 220 pounds. (Tr. at 40). She shopped in stores, prepared meals, cleaned her home, watched television, and used social media on her phone. (Tr. at 47–48). She testified that she could stand and walk for five to thirty minutes without pain, and she could lift approximately ten to twenty pounds. (Tr. at 50–51). Davis stated on a

pain questionnaire from October 2021 that she had chest and back pain and took naproxen. (Tr. at 213). In an accompanying function report, she stated that she took care of her dog, cleaned her home daily, did laundry every two weeks, and shopped in stores once a week. (Tr. at 219). In a pain questionnaire from June 2022, Davis stated that she had pain in her back, knees, shoulders, ankles, feet, and hands. She had not sought treatment but still took naproxen. (Tr. at 241).

On August 11, 2022, Dr. Kenneth Holder examined Davis. (Tr. at 344). Her range of motion was normal in all joints, but she had limited movement in her lumbar and cervical spine. She had no muscle spasm, and her straight leg raise was negative. She demonstrated 4/5 strength in all extremities, and her gait and posture were normal. She could hold a pen and write, touch her fingertips to palm, oppose her thumb to fingers, pick up a coin, and squat to rise. She could not walk on heels and toes. She reported using a walker or cane at times, and grip strength was ninety percent in right and eighty-five percent in left. Dr. Holder found moderate limitations to lifting, carrying, bending, stooping, squatting, and climbing. (Tr. at 348). On August 19, 2022, state agency medical consultant Dr. Brett Alberty reviewed Davis's medical records and found she could perform the full range of light work, including lifting and carrying twenty pounds occasionally, lifting and carrying ten pounds frequently, and standing or walking six hours in an eight-hour workday. (Tr. at 86).

When evaluating a claimant's subjective complaints of pain, the ALJ should consider objective medical evidence, the claimant's work history, and other evidence relating to (1) the claimant's daily activities; (2) the duration, frequency, and intensity of

5

the pain; (3) precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; and (5) the claimant's functional restrictions. *See Schwandt v. Berryhill*, 926 F.3d 1004, 1012 (8th Cir. 2019). A conservative course of treatment constitutes substantial evidence supporting a less limiting RFC and may constitute the "most persuasive medical reason" to support an RFC finding. *See Pierce v. Kijakazi*, 22 F.4th 769, 773 (8th Cir. 2022); *Buford v. Colvin*, 824 F.3d 793, 796–97 (8th Cir. 2016).

Here, the ALJ found Dr. Holder's opinion partially persuasive, and his description of "moderate limitations" to lifting, carrying, bending, stooping, squatting, and climbing "generally consistent with light exertional level work."[3] (Tr. at 21). The ALJ also found Dr. Alberty's opinion—that Davis could perform a full spectrum of light work—generally persuasive. Although Davis testified that she could not stand or walk longer than thirty minutes without pain, the ALJ accurately noted that no objective medical evidence supported her assertion, that she had not been prescribed pain medication, and that she had not sought treatment during the alleged period of disability. The ALJ also found that Davis's claim of disabling physical pain was not consistent with her wide range of activities of daily living, which included preparing meals, cleaning her home, doing laundry, taking

---

[3]Although Davis suggests that the ALJ should have developed the record on what Dr. Holder meant by "moderate limitations" and whether those limitations applied to standing and walking, this Court is satisfied that there was sufficient medical evidence in the record for the ALJ to determine Davis was not disabled. *See Martise v. Astrue*, 641 F.3d 909, 926–27 (8th Cir. 2011) (quoting *Johnson v. Astrue*, 627 F.3d 316, 320 (8th Cir. 2010)) (the ALJ should "order medical examinations and tests only if the medical records presented to him do not give sufficient medical evidence to determine whether the claimant is disabled"); *see also* 20 C.F.R. §§ 404.1420b(b)(1), 416.920b(b)(1) (indicating that when there is an inconsistency in a medical opinion, the ALJ will consider the relevant evidence to determine disability).

care of a pet, and shopping in stores. The ALJ's decision to limit Davis to light work is supported by substantial evidence.

As for Davis's mental impairments, she argues that the ALJ should have included additional limitations related to her inability to attend and to perform work daily. Davis further posits that due to drowsiness from her medication, she frequently takes naps, which the RFC failed to consider.

Davis testified at the April 2023 hearing that she had difficulty being around people, saw "floating protectors," and that she heard things in her head. (Tr. at 45). Davis stated that she suffered from mental health problems her entire life, but she had never been hospitalized. *Id*. She took medication for blood pressure management, sleep, anxiety, and depression. (Tr. at 49). She stated that her medications made her feel tired but that she did not cry as much. *Id*. She described taking a nap during the day that usually lasted thirty minutes to an hour. (Tr. at 55). She was studying for her GED, and her medicine and studying made her tired. *Id*. When asked to describe her main problem interfering with her ability to work, she stated physically being able to work, mentally being able to handle the stress of work, and understanding what was real and what was not. (Tr. at 53).

On December 8, 2021, Samuel Hester, Ph.D., conducted a consultative psychiatric examination of Davis. (Tr. at 289). Hester noted that Davis had a cooperative attitude, was logical, and did not display bizarre obsessions or preoccupations. (Tr. at 291–92). She did appear depressed, anxious, and, at times, tearful. (Tr. at 291). Hester noted auditory and visual hallucinations, which he described as "flashbacks." (Tr. at 292). Hester noted a long history of physical and sexual abuse. (Tr. at 293). He diagnosed Davis with depressive

disorder, posttraumatic stress disorder, panic disorder without agoraphobia, and borderline personality traits. *Id*. In his opinion, Davis had a limited capacity to communicate and interact in a socially adequate manner; had the capacity to communicate intelligently, but not always effectively; might have difficulty coping with the mental demands of basic work tasks until more progress was made in treatment; had a limited ability to attend to and sustain concentration on basic tasks; had the ability to sustain persistence in completing tasks; and could complete work tasks within an acceptable time frame if she could attend work and if tasks were simple. (Tr. at 294).

Two state agency psychological experts, Brian O'Sullivan, Ph.D., and Margaret Podkova, Psy.D., also provided opinions. O'Sullivan reviewed Davis's records in March 2022 and found that Davis had mild to moderate limitations. (Tr. at 66). She had the capacity to work when interpersonal contact was incidental to the work performed; when the complexity of tasks was learned and performed by rote with few variables and little judgment; and when supervision was simple, direct, and concrete. *Id*. O'Sullivan further noted that Davis could keep an average, if varying, pace for simple, routine tasks in a relatively uncrowded task space with occasional social interactions but that she might have occasional punctuality or attendance problems if her symptoms fluctuated. (Tr. at 67). After reviewing Davis's updated record in August 2022, Podkova agreed that Davis retained the capacity for work where interpersonal contact was incidental; complexity of tasks was learned and performed by rote with few variables and little judgment; and supervision was simple, direct, and concrete. (Tr. at 84).

Davis requested a therapy referral in May 2022, and she began counseling with Bethany Batchelor on August 5, 2022. (Tr. at 320, 351). Batchelor initially described Davis as disheveled, needing redirection throughout the session, depressed, tearful, excessively anxious, and having "some flight of ideas." (Tr. at 359). Davis was diagnosed with generalized anxiety disorder. (Tr. at 398). Davis continued to attend therapy weekly until early 2023. Notes from later sessions indicate that Davis had a "good prognosis," that she was doing "much better," and that her symptoms had improved with medication. (Tr. at 423, 426, 446). In November 2022, Davis told her psychiatric nurse practitioner that she was able to sleep most nights with Ambien; that she felt her other medications, which included Prozac, Abilify, prazosin, and gabapentin, were "helping tremendously"; and that she believed therapy was working. (Tr. at 446).

The Court will not reverse the ALJ's "denial of benefits so long as the ALJ's decision falls within the 'available zone of choice.'" *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008). The decision of the ALJ "is not outside the 'zone of choice' simply because [the Court] might have reached a different conclusion had [it] been the initial finder of fact." *Id.* at 1115. "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Medhaug v. Astrue*, 578 F.3d 805, 813 (8th Cir. 2009) (quotation omitted).

The ALJ found that Davis's mental health impairments were a substantial limitation on her ability to work. However, the ALJ found that Davis's claim of total disability was not supported by, or consistent with, the overall record. The ALJ pointed to Davis's

9

relatively conservative treatment record and overall improvement with therapy and medication. The ALJ noted that in January 2023, Davis reported improvement in her psychological symptoms, the ability to apply coping skills, and the capacity to set boundaries with family members. (Tr. at 22). The ALJ observed that during examinations, Davis had denied any side effects from her medications. (Tr. at 320, 463). The ALJ found Hester's opinion—issued before Davis began treatment with Batchelor—partially persuasive. It was well supported by Davis's presentation at the examination, including her ability to complete the exam and cognitive testing. Nevertheless, the ALJ found that Hester's opinion regarding Davis's inability to cope with workplace stress was unhelpful and unpersuasive because it was a possible, but not firm, limitation. Moreover, the ALJ noted that Hester's use of the word "limited" was vague and undefined. (Tr. at 23). As for the opinions of O'Sullivan and Podkova, the ALJ found them partially persuasive, but the ALJ concluded that the RFC was better supported by the record. The ALJ noted that Davis's reported daily activities, including taking care of a pet, shopping in stores, cleaning her house, and preparing meals, were inconsistent with her alleged disability.

Although Davis clearly faces hurdles related to her mental health, the Court's review is not an assessment of what conclusions the ALJ could have reached or what the Court would have determined. Where the ALJ has properly considered all relevant evidence in the record and landed on a decision within the "zone of choice," it is not for this Court to reevaluate the evidence. Here, the ALJ determined that while Davis could perform light work, due to her mental health impairments, she was limited in the type of work, the pace of work, and the amount of interaction with others. These limitations are reasonable

considering the evidence. The ALJ noted that while Davis had a long history of mental health issues and continued to have significant limitations, she had improved steadily with consistent treatment. Her medications were effective, and she had expressed satisfaction with her therapeutic regimen.

Because the ALJ's RFC determination—regarding both Davis's physical and mental impairments—is supported by substantial evidence in the record, it is affirmed.

### 2. VE Conflict

Davis argues that the ALJ erred at step five in finding that there was other work existing in the national economy that Davis could perform. Specifically, Davis maintains that the ALJ failed to resolve two conflicts between the testimony of the VE and job descriptions in the DOT.

In his hypothetical, the ALJ asked the VE to assume an individual was limited to simple, repetitive work where she could deal with simple work-related decisions, to routine work setting changes (but not production-rate pace), and to occasional interaction with coworkers, supervisors, and the public. (Tr. at 58–59). The VE responded that three light unskilled jobs fit the hypothetical: routing clerk, with approximately 56,000 jobs; housekeeping cleaner, with approximately 65,000 jobs; and collator operator, approximately 44,000 jobs. (Tr. at 59). The VE had reduced the number of jobs for routing clerk and housekeeping cleaner to accommodate the pacing restriction. *Id*.

Davis first argues that both routing clerk and collator operator are listed in the DOT as requiring level two reasoning, which conflicts with the ALJ's restriction to simple, repetitive work. The Eighth Circuit, however, has rejected this argument. *See Moore v.*

*Astrue*, 623 F.3d 599, 604 (8th Cir. 2010). In *Moore*, the ALJ's hypothetical limited the claimant to simple, routine work. The VE identified two occupations, both requiring level two reasoning. The DOT defined "level two reasoning" as the ability to apply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Moore maintained that the hypothetical could only be satisfied by occupations limited to level one reasoning, which was defined as the ability to apply commonsense understanding to carry out simple one- or two-step instructions. The appellate court found "no direct conflict between carrying out simple job instructions for simple, routine and repetitive work activity, as in the hypothetical, and . . . occupations involving instructions that, while potentially detailed, are not complicated or intricate." *Id*. (internal quotations omitted); *see also Stanton v. Commissioner*, 899 F.3d 555, 559 (8th Cir. 2018) (noting that "simple work" did not restrict the hypothetical claimant to level one reasoning). Thus, there is no conflict here where the ALJ's hypothetical included a limitation of simple, repetitive work, and the VE identified two jobs that required level two reasoning.

Next, Davis argues that the DOT description for housekeeping cleaner lists "rendering personal assistance to patrons" as a job duty, which conflicts with the limitation to occasional interaction with the public. This argument is equally unavailing.

The DOT outlines the following as tasks of a housekeeping cleaner:

> Cleans rooms and halls in commercial establishments, such as hotels, restaurants, clubs, beauty parlors, and dormitories, performing any combination of following duties: Sorts, counts, folds, marks, or carries linens. Makes beds. Replenishes supplies, such as drinking glasses and writing supplies. Checks wraps and *renders personal assistance to patrons*. Moves furniture, hangs drapes, and rolls carpets.

DOT No. 323-687-014 (emphasis added). While the job description does include interaction with the public as a possible task, the bulk of work described does not involve interaction with the public. Perhaps more importantly, the ALJ's hypothetical did not prohibit all interaction with the public or even limit the claimant to minimal, superficial contact with the public. Rather, the ALJ's hypothetical allowed for *occasional* interaction with the public, which is congruent with the duties outlined in the above job description. Consequently, this Court is unconvinced that a conflict exists between the job description for housekeeping cleaner in the DOT and the hypothetical delineated by the ALJ.

Accordingly, this Court is satisfied that substantial evidence supports the ALJ's step five decision.

**IV. Conclusion:**

The Court concludes that the ALJ applied proper legal standards and that substantial evidence on the record as a whole supports the ALJ's decision. The finding that Davis was not disabled is hereby AFFIRMED. Judgment will be entered for the Defendant.

IT IS SO ORDERED this 23rd day of December 2024.

_____
UNITED STATES MAGISTRATE JUDGE